DANIEL THOMAS PEAK v. JOAN MARIE WELCH PEAK

No. 8614DC44

(Filed 16 September 1986)

1. **Divorce and Alimony § 30— equitable distribution—pension benefits—effect of treatment as separate property—unequal division of property proper**

   Where the statute in effect at the time plaintiff instituted his divorce action provided that pension benefits were separate property, and an amendment making them marital property took effect three days later, the trial court did not err in finding that the impact of the statute upon defendant was harsh and in using this finding as one of nine in forming an opinion that an equal distribution of marital property would not be equitable. N.C.G.S. § 50-20(c)(5) and (c)(12).

2. **Divorce and Alimony § 30— equitable distribution—savings account as marital property—division by parties—funds not changed to separate property**

   Property acquired in exchange for marital funds is considered marital property to the extent of the contribution even after separation, and there was no merit to plaintiff's contention that, although savings account funds were once marital, an equal division by the parties upon separation changed the nature of the funds such that defendant's contribution for the purchase of a house in both parties' names but in which plaintiff resided was a mere loan of defendant's separate property.

3. **Divorce and Alimony § 30— equitable distribution—funds contributed by wife to husband after separation—increase in value—insufficiency of court's findings**

   Where defendant contributed $5,000 in marital property toward the purchase of a home for plaintiff one year after the parties' separation, she was entitled to an increase in the value of her original contribution, but the trial court's findings were insufficient to support a determination as to the reasonableness of the court's award of a $3,000 increase.

4. **Divorce and Alimony § 20.3— attorney's fees—reasonableness of rates—findings insufficient**

   The trial court erred in awarding attorney's fees to defendant where the court made sufficient findings as to the skill and time required and as to the nature of the services, but the court made no findings concerning whether the attorney's rates were in line with those customarily charged.

APPEAL by plaintiff from *Labarre, Judge.* Judgment entered 19 August 1985 in DURHAM County District Court. Heard in the Court of Appeals 18 August 1986.

Plaintiff and defendant were married on 6 July 1957, while plaintiff husband was still in medical school. Within a year of the marriage, the first of seven children was born, and the couple

agreed that Ms. Peak would no longer work outside the home. Dr. Peak completed his medical training in psychiatry and at the time of the separation in 1974 was employed by Duke University.

The separation was an unusual one. For years the couple had not gotten along and were barely speaking to each other, yet, as Ms. Peak put it, the separation itself was "conducted like a marriage." The house Dr. Peak moved into was put in the names of both husband and wife. The children were divided between the two households, and Dr. Peak gave his wife half his income for the maintenance of her home. Each party had a key and free access to the other's house. Divorce was not even mentioned until 1981.

Approximately one year after the separation, plaintiff moved to Milwaukee, Wisconsin and set up practice there. Again he bought a house in both names and continued to support the defendant. Two years later plaintiff moved back to Durham, buying yet another house in both names. This house—on Cheviot Street—was later rented out. At the time of the trial, Dr. Peak resided in a house he bought in both names in the Bahama community. Ms. Peak has continued to live in the marital home.

Plaintiff filed this action on 29 July 1983 seeking absolute divorce and equitable distribution. Defendant counterclaimed for attorney's fees and alimony. Judgment was entered on 19 August 1985 granting an absolute divorce. The court ruled that an equal division of the property would not be equitable and awarded the defendant alimony and attorney's fees. Plaintiff appealed. Defendant did not give notice of appeal but petitioned for certiorari to this court. That petition was denied on 3 February 1986.

*Epting and Hackney, by Joe Hackney, for plaintiff-appellant.*

*Maxwell, Freeman and Beason, P.A., by James B. Maxwell, for defendant-appellee.*

WELLS, Judge.

[1] The first assignments of error concern pension benefits which Dr. Peak had accrued at Duke University. Plaintiff contends that the trial court wrongly considered a part of N.C. Gen. Stat. § 50-20 which took effect only after the plaintiff filed for divorce. At the time plaintiff instituted action on 29 July 1983,

the applicable portion of the statute stated that "vested pension or retirement rights and the expectation of non-vested pension rights or retirement rights shall be considered separate property." G.S. § 50-20(b)(2) (1981). Only three days later — 1 August 1983 — an amendment took effect making vested pension or retirement rights marital property. G.S. § 50-20(b)(1) (1983). The trial court, under the "catchall" provison of G.S. § 50-20(c)(12), considered the timing of the action in deciding whether an equal distribution of the marital property would be equitable. That factor was among nine which the judge set out as the basis of his opinion that an equal distribution would not be equitable.

Whether an equal distribution would be fair to the parties is a question left to the broad discretion of the court. In order to establish error, the reviewing court must find a clear abuse of discretion and may only reverse upon a showing that the trial court's actions are "manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985). The catchall provision of G.S. § 50-20 allows the trial judge to consider "any other factor which [it] finds to be just and proper." G.S. § 50-20(c)(12). It was this subsection which the court cited when it found the following contested fact:

> i. N.C.G.S. § 50-20(c)(12): The Court is aware that amendment to the Equitable Distribution Statute in North Carolina, which was effective August 1, 1983, would have allowed the pension benefits of Dr. Peak to have been included in the marital assets. The Court is further aware that the Legislature passed this amendment prior to the date this divorce action was filed, but the action was filed before the effective date. The impact upon Ms. Peak, as applied to this particular case, is considered by the Court to be harsh.

This finding did not, as plaintiff contends, "operate to invalidate a legislative enactment" thus making pension rights separate property. The trial court merely took into account the effect which that classification would have upon Ms. Peak when it was deciding whether an equal division of marital property would be equitable. This is not only allowed, it is mandated under G.S. § 50-20(c)(5) as it then existed: "The court shall consider . . . vested pension or retirement rights and the expectation of non-vested pension or retirement rights, which are separate property." This the court did in an earlier finding:

c. N.C.G.S. § 50-20(c)(5): Dr. Peak has vested pension and/or retirement rights with the State of North Carolina and through TIAA, in excess of Seventy Thousand Dollars ($70,000.00) at the present time, and the benefits at Duke University through TIAA had been accumulated during the course of the marriage and while the parties were living together.

Therefore, the court's use of G.S. § 50-20(c)(12) was essentially a superfluous restatement of its finding under G.S. § 50-20(c)(5) and was not error.

Plaintiff next assigns error to the court's failure to set forth a standard of proof in its determination that an equal division of property would not be equitable. We disagree. Nine of the twelve factors set out in G.S. § 50-20(c) were addressed in detail by the court, and the weight to be given each of these lies in the judge's discretion. *White, supra.* This assignment is overruled.

[2] Plaintiff next assigns error to the court's treatment of the Cheviot Street property which was bought after the couple separated. The court found that the property was part marital and part separate and placed an $8,000 judgment lien on it. This figure represents a $5,000 contribution to the purchase price of the house and a $3,000 increase in its value. Although the trial court did not specify its rationale in its conclusions, it apparently relied on our decision in *Wade v. Wade* adopting the "source of funds" rule. 72 N.C. App. 372, 325 S.E. 2d 260, *disc. rev. denied,* 313 N.C. 612, 330 S.E. 2d 616 (1985). That rule allows the court to determine that a single piece of property may be both marital and separate in nature. *Id.* In such a case, "each estate is entitled to an interest in the property in the ratio its contribution bears to the total investment in the property." *Id.* Plaintiff acknowledges such a rule but denies its applicability here.

When Dr. and Ms. Peak separated in 1974, they divided a savings account which consisted of the proceeds from the sale of some property. Each party received approximately $7,000. Plaintiff bought a house in Durham and lived there for about a year. During that time, the parties shared expenses, took vacations together and had free access to the other's house. Dr. Peak later left Duke University and set up practice in Milwaukee, Wisconsin. Ms. Peak withdrew $5,000 from her share of the proceeds of the

property to help her husband make a downpayment on a house in Milwaukee, which was put in both names. When Dr. Peak moved back to Durham, he sold the Milwaukee house at a profit of between nine and fourteen thousand dollars. He purchased the Cheviot Street house in both names and lived there until he bought another home in Durham. The Cheviot Street house was rented out and at the time of the trial was generally paying for itself. Plaintiff never repaid the $5,000 contributed by his wife.

The threshold question is whether the court properly designated the funds as marital property. Property acquired after separation of the parties is specifically excepted from the definition of marital property contained in the 1983 cumulative supplement to G.S. § 50-20(b)(1), the applicable law in this case. *See Wilson v. Wilson,* 73 N.C. App. 96, 325 S.E. 2d 668, *disc. rev. denied,* 314 N.C. 121, 332 S.E. 2d 490 (1985). However, property acquired in exchange for marital funds is considered marital property to the extent of the contribution even after separation. *Phillips v. Phillips,* 73 N.C. App. 68, 326 S.E. 2d 57 (1985). Plaintiff contends that, although the funds in question were once marital, an equal division by the parties upon separation changed the nature of the funds such that Ms. Peak's contribution was a mere loan of her separate property. We disagree.

In *Weaver v. Weaver,* 72 N.C. App. 409, 324 S.E. 2d 915 (1985), we looked to the wording of the equitable distribution statute in deciding a similar issue. Although the statute instructs the trial court to enforce agreements providing for the distribution of marital property, these must be "written . . ., duly executed and acknowledged in accordance with G.S. § 52-10 and 52-10.1." G.S. § 50-20(d). The purpose of this requirement is to prevent fraud and overreaching by one of the spouses. *McIntosh v. McIntosh,* 74 N.C. App. 554, 328 S.E. 2d 600 (1985). In *Weaver,* the couple had orally agreed at the time of separation to split their furnishings among the two households. The trial court chose to enforce the agreement on the grounds that it was satisfactory to both parties at the time, and we reversed. In the instant case, we find that a simple oral division of marital funds at separation should not be binding on the parties. The trial court was correct in its designation of the $5,000 as marital property.

[3] The next question is whether the trial court properly allotted the defendant an increase in the value of her original

$5,000 contribution. Plaintiff contends that, under G.S. 50-21(b), the funds must be valued for marital property distribution as of the date of separation and that the trial court erred in awarding the defendant more than $5,000. We disagree. Our decision in *Swindell v. Lewis*, No. 852DC1251 (N.C. App., filed 5 August 1986), addressed the issue of appreciation between the date of separation and the final judgment of divorce. In that case, the couple separated in 1972, when the marital real property was valued at $316,193. When absolute divorce was granted eleven years later, the property was worth $913,889. The trial court determined that an equal division of the properties was equitable and ordered that each party receive a one-half undivided interest in each piece of property as it was valued in 1983. The appellants in that case—the decedent husband's heirs and the administrator of the estate—contended that the wife's share should have been half of the value of the property at the time of separation, or $158,096.50. We held, however, that each party is entitled to a proportionate share of the return on his or her separate property. Since the court decided upon an equal distribution of the marital property, Ms. Swindell would get 50% of its value at the time of separation plus 50% of any appreciation. Since the total amount under this formula was the same as half the value of the property at the time of the decree, further revisions were unnecessary and we affirmed the decision of the lower court.

We now turn to the case at bar. Although Ms. Peak is entitled to a proportionate return on the $5,000 in marital funds which the court included in her share of the property, there are not sufficient findings upon which to determine the reasonableness of the court's award of a $3,000 increase. The appropriate disposition of this issue will require the trial court to determine the following: (1) the value of the Milwaukee property at the time it was acquired; (2) the relationship or ratio of the $5,000 investment by Ms. Peak to that value; and (3) the appreciation in value at the time of sale attributable to Ms. Peak's investment. Similar findings must also be made as to the Cheviot Street property. We therefore remand to the trial court for appropriate findings as to this issue. As the final disposition of this issue may affect the trial court's judgment as to an equitable distribution of the entire marital estate, we therefore reverse the judgment entered and

Peak v. Peak

remand the entire equitable distribution case for further findings, conclusions and judgment.

[4] The plaintiff next argues that the court's order awarding the defendant counsel fees was not supported by sufficient findings of fact. We agree. The general rule is that once a party's entitlement to counsel fees in a domestic case has been shown, the court decides upon a reasonable fee. Although the amount is within the court's discretion, the order must contain findings of fact as to the basis of the award. These include the nature and scope of the legal services, the skill and time required, and the relationship between the fees customary in such a case and those requested. *Owensby v. Owensby*, 312 N.C. 473, 322 S.E. 2d 772 (1984). The purpose of such findings is to enable a reviewing court to determine the reasonableness of the award. *Id.*

In the case at bar, the trial court took into account "the magnitude of the services performed, the nature of the services that have been rendered to Ms. Peak [and] the unusual and complex issues raised by a ten-year separation." The court then found that "the total number of hours of 57.7 were both reasonable and necessary in connection with the representation of Ms. Peak; of that total amount of time, the court finds that 33.9 hours were related predominately to the issues involving the custody and support of the children and the alimony claim of Ms. Peak." These findings are sufficient as to the skill and time required and as to the nature of the services, but the court found no facts concerning whether the attorney's rates were in line with those customarily charged. We therefore remand for further findings on that issue.

The decision appealed from is affirmed in part, reversed in part and remanded.

Chief Judge HEDRICK and Judge WEBB concur.