TED C. ELMORE v. JANICE W. ELMORE

No. 8325DC137

(Filed 17 April 1984)

Abatement and Revival § 13— denial of divorce as matter of law—effect of death of plaintiff pending appeal

An action for an absolute divorce abated upon the death of the plaintiff during the pendency of his appeal from the trial court's entry of a directed verdict denying the divorce as a matter of law even though property rights incidental to the marital status would be affected by the grant or denial of a divorce.

APPEAL by plaintiff from *Mullinax, Judge.* Judgment entered 24 June 1982 in District Court, CATAWBA County. Heard in the Court of Appeals 13 January 1984.

Plaintiff appeals from a directed verdict denying him an absolute divorce.

---

*Corne, Pitts, Corne & Grant, P.A., by Stanley J. Corne, for plaintiff appellant.*

*Rudisill & Brackett, P.A., by J. Steven Brackett, for defendant appellee.*

WHICHARD, Judge.

### I.

The dispositive issue is whether, when the trial court directs a verdict denying an absolute divorce as a matter of law, the action abates upon the death of the plaintiff during pendency of his appeal. We hold that it does.

### II.

Plaintiff (husband) brought this action against defendant (wife) for absolute divorce based on continuous separation for more than one year. Plaintiff's evidence, in brief summary, showed the following:

Plaintiff had served as a deputy sheriff, had been shot and wounded in the line of duty, and was paralyzed as a result. His marriage with defendant had thereafter deteriorated.

Four years before plaintiff filed this action, the liability carrier which covered the shooting incident built an apartment for him onto the house which he had occupied with defendant. Plaintiff thereafter lived in the apartment alone, and neither party had anything further to do with the other.

Defendant continued to occupy the house in which both parties formerly had lived. Plaintiff had continuing access thereto through a door from his apartment. He unlocked the door and entered the house from time to time, but only when defendant was away. Plaintiff kept the apartment side of the door locked, and defendant never came into the apartment.

The reputation in the neighborhood was that plaintiff and defendant were living separate and apart. A seventy-four-year-old neighbor came by twice daily to take care of problems which resulted from plaintiff's physical incapacity. She never observed any association between plaintiff and defendant, except that she heard defendant "bless him out a 'heap' of times."

Following presentation of evidence and arguments of counsel on defendant's motion for directed verdict, the court stated: "I think that as a matter of law by living as they are they're holding themselves out as man and wife." It thus granted defendant's motion for directed verdict and entered judgment denying the divorce.

Plaintiff appeals.

### III.

Defendant has filed with this Court a motion to dismiss plaintiff's appeal on the ground that "the appeal has become moot and should abate for the reason that the plaintiff-appellant died on April 27, 1983." Plaintiff's counsel responded, acknowledging the 27 April 1983 death of his client, but arguing that the motion nevertheless should be denied because property rights would be affected by the grant or denial of the divorce.

At oral argument counsel for both parties acknowledged the 27 April 1983 death of plaintiff. Counsel for defendant again urged that the action should abate on that account, and counsel for plaintiff argued that it should not. A threshold question is thus presented as to the effect on the action of plaintiff's death during pendency of the appeal.

### IV.

G.S. 1A-1, Rule 25(a) provides: "No action abates by reason of the death of a party if the cause of action survives." G.S. 28A-18-1 provides:

(a) Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of his estate.

(b) The following rights of action in favor of a decedent do not survive:

. . .

(3) Causes of action where the relief sought could not be enjoyed, or granting it would be nugatory after death.

The common law places a claim for absolute divorce in the category of actions which do not survive the death of a party, and in which "the relief sought could not be enjoyed, or granting it would be nugatory after death." The rule has been stated as follows:

> The cases from all states . . . hold that a pending divorce suit abates on the death of either party. Since death itself dissolves the marital status and accomplishes the chief purpose for which the action is brought, there is no longer a marital status upon which a final decree of divorce may operate. The jurisdiction of the court to proceed with the action is terminated. The marital status of the parties is the same as if the suit had never been begun.

1 R. Lee, North Carolina Family Law § 48, at 253 (1979).

The following is a further statement of the rule:

> The later cases fully support the settled rule stated in the original annotation [104 A.L.R. 654] to the effect that upon the death of one of the parties to a purely divorce action before the entry of a final decree therein, whether before or after the entry of an interlocutory decree or a decree nisi, the action abates, with the consequence that the action may not be continued and no final decree of divorce may be entered thereafter, since the object sought to be accomplished by the final decree — that is, the dissolution of the marriage relation — is already accomplished by the prior death of one of the parties, and there is then no status of marriage upon which the final decree of divorce may operate; and that the result is that notwithstanding the pending divorce action and the fact that a divorce might have been granted had no death occurred, the wife is regarded as the widow of the deceased husband, or the husband is regarded as the widower of the deceased wife, as the case may be.
>
> . . . .
>
> It is the general rule that an action for divorce proper, being truly a personal action based upon the personal relationship and status of marriage, terminates with the death of either spouse, not only because of its personal character, but because the marriage is ipso facto dissolved by death.

Elmore v. Elmore

Annot., 158 A.L.R. 1205, 1206 (1945).

One court expressed the rationale somewhat more colorfully. It stated:

> No decree for a divorce having been pronounced, none can now be entered. The prayer of this bill in that respect, has been answered by the inevitable decree of a tribunal higher than any earthly forum. The marriage relation is dissolved forever, and all litigation between the original parties must cease.

*Swan v. Harrison,* 42 Tenn. (2 Cold.) 534, 539-40 (1865). The United States Supreme Court stated similarly: "[N]o power can dissolve a marriage which has already been dissolved by act of God." *Bell v. Bell,* 181 U.S. 175, 178, 45 L.Ed. 804, 807, 21 S.Ct. 551, 553 (1901); *see* Annot., 3 A.L.R. 1403, 1422-23 (1919).

In *Webber v. Webber,* 83 N.C. 280 (1880), our Supreme Court applied an exception to the foregoing general rule in situations governed by the "rule of relation," under which "all judicial proceedings during a term are treated as if they took place on the first day of the term." *Id.* at 280. The plaintiff in *Webber* died after commencement of the divorce trial, but before the jury retired. The Court held that the trial court erred in declining to proceed with the cause following the plaintiff's demise, since by the rule of relation the entire proceeding would be deemed "to have been conducted and concluded on a day when the party was in life." *Id.* at 284. It stated, however, that unless prevented by the rule of relation "[i]t is clear that the action does not survive, and consequently abates." *Id.* at 280.

The instant facts differ from those in *Webber.* Plaintiff's death here did not occur during trial, but several weeks subsequently. The trial court did not abate this action by reason of plaintiff's death during trial; rather, it directed a verdict for defendant denying a living plaintiff a divorce. This case thus does not involve an abatement during trial which, by virtue of the "rule of relation," was erroneous; and the holding in *Webber* does not control.

"[T]he relief sought could not be enjoyed, or granting it would be nugatory," G.S. 28A-18-1(b)(3), unless upon reversal and remand a judgment of divorce could be entered nunc pro tunc as

of the date of the original trial or some other date prior to plaintiff's demise. Such would not be consistent with the function and purpose of judgments nunc pro tunc, however.

> The general rule is that an amendment of the record of a judgment, and a nunc pro tunc entry thereof, may not be made to correct a judicial error involving the merits, or to enlarge the judgment as originally rendered, or to supply a judicial omission or an affirmative action which should have been, but was not, taken by the court, or to show what the court might or should have decided, or intended to decide, as distinguished from what it actually did decide. The power of the court in this regard is to make the journal entry speak the truth by correcting clerical errors and omissions, and it does not extend beyond such function. . . . The nunc pro tunc order must conform to and be no broader in its terms than the judgment originally entered.

> . . . [T]he office of entering, and the power to enter, a judgment nunc pro tunc are restricted to placing upon the record evidence of judicial action which has actually been taken; and . . . the correction of the record of a judgment by amendment and the entry of such amendment nunc pro tunc presuppose a judgment actually rendered at the proper time. Indeed, there is even authority to the effect that a judgment nunc pro tunc is beyond the jurisdiction of the court and void, where no judgment had previously been rendered.

46 Am. Jur. 2d *Judgments* § 201, at 443-45 (1969). For judgment nunc pro tunc to be proper,

> [i]t must appear that a judgment was rendered and not entered, or that the case had reached the stage when there was nothing more to do than to render the judgment as a matter of form, or that the judgment through some clerical error or omission did not express what the court had actually adjudged; *but it cannot be used as a power of amendment to make the judgment different from what was rendered, although that may have been erroneous.*

2 T. Wilson & J. Wilson, McIntosh North Carolina Practice and Procedure § 1625, at 116 (2d ed. 1956) (emphasis supplied). The

foregoing would appear to obtain notwithstanding the advent of G.S. 1A-1, Rule 6(c). *See id.* at 66 (D. Phillips Supp. 1970).

The foregoing general rules have been expressly applied to divorce actions. *See* Annot., 19 A.L.R. 3d 648 (1968). "The courts have generally maintained that a judgment of divorce may be entered nunc pro tunc only when it has actually been made or rendered previously." *Id.* at 652. The court "cannot cause an order or judgment [of divorce] that was never previously made or rendered to be placed upon the record of the court." *Black v. Industrial Commission of Arizona,* 83 Ariz. 121, 125, 317 P. 2d 553, 555-56 (1957), *overruled on other grounds,* 109 Ariz. 174, 507 P. 2d 99 (1973).

## V.

Counsel for plaintiff has argued that the action should not abate because property rights would be affected by the grant or denial of the divorce. It is true that "death of a party terminates only the action as one for divorce and does not necessarily prevent it from being revived and continued insofar as it seeks an adjudication of property rights between the parties." 1 R. Lee, *supra,* at 253; *see also* 2A W. Nelson, Divorce and Annulment § 21.10, at 307 (2d ed. 1961) ("death abates a [divorce] proceeding . . ., and is usually ground for its dismissal; but it does not do so to the extent that property rights or interests are involved"); 27A C.J.S. *Divorce* § 188, at 783 (1959) ("Where an appeal is prosecuted from a decree or judgment denying a divorce, and while the appeal is pending one of the parties dies, the appeal will usually be dismissed, unless property rights are involved . . . .").

Plaintiff did not seek an adjudication of property rights, however. He sought only an absolute divorce and custody of a child born of the marriage. The only property rights affected by the grant or denial of a divorce here are those purely incidental to the marital status. As to those,

> [i]t may be stated as a general proposition . . . that, while property rights, as such, involved in a divorce action, may prevent the abatement of the action upon the death of one of the spouses, the fact that the surviving spouse will, if the action is abated, be enabled to share in the estate of the other

> as the widow or the widower, is, according to the weight of authority, no reason against its abatement.

> . . . [I]t has been said or held that no final decree may be entered after the death of one of the parties, simply because property rights would incidentally be affected.

Annot., 104 A.L.R. 654, 656 (1936). The highest court of one jurisdiction has stated in this regard:

> While it has been held in some jurisdictions that a party defeated in a divorce action by a judgment, and thereby deprived of property rights, may prosecute an appeal after the death of the other party . . ., it has never been held that an action . . . may be prosecuted to judgment after the death of the plaintiff because incidentally it might take away property rights from the other party, but the contrary has been held. (Citations omitted.)

*Cox v. Dodd,* 242 Ala. 37, 40, 4 So. 2d 736, 738 (1941).

It is clearly the general rule that an action solely for absolute divorce abates upon the death of one of the parties, and the marital status cannot thereafter be altered. To hold that the marital status becomes unalterable, but that property rights incidental thereto do not, would be illogical and inconsistent. The foregoing statements of authority thus appear grounded in sound reason and logic.

## VI.

We believe the trial court clearly erred in granting defendant's motion for directed verdict. Plaintiff's evidence not only tended to show that the parties had separated, but that the separation was caused by defendant's constructive abandonment of plaintiff. We are nevertheless compelled to hold, pursuant to the foregoing authorities, that this action abated upon the 27 April 1983 death of the plaintiff. The appeal thus has become moot, and is accordingly dismissed.

Action abated; appeal dismissed.

Judges WEBB and WELLS concur.